Peck, J.
The city of Toledo, a municipal corporation of this state, in September 1854, by the judgment of the Lucas court of common pleas, appropriated the private property of the plaintiffs in error, to the extension and construction of Ottawa street in said city, under and by virtue of the authority conferred upon it by sections 26 and 27, of the “act to provide for the organization of cities and incorporated villages,” passed May 3, 1852 (Swan’s R. S. of 1854, 961-2); to the legality of which proceedings* various exceptions have been taken; but we have deemed it necessary to consider only the tenth and twelfth assignments — “ That said proceedings are not in compliance with the statutes of Ohio,” and that, therefore, “ the court never had or acquired any jurisdiction to render said judgment.”
In Dyckman v. Mayor of N. Y., 1 Selden, 439, it is said that “ no prerogative of sovereign power should be watched with greater vigilance than that which takes private property for public use. It should never be exercised except when the public interests clearly demand it, and then cautiously; and the requirements of the statute authorizing its exercise must be strictly pursued.”
So in The State v. Jersey City, 1 Dutcher, 310, it is said, “When this power is delegated by the legislature to a municipal or other corporation, its exercise is subject to the inflexible rule, that the power must be strictly pursued, and ordinarily, it must appear to be so on the face of the pro ceedings.”
And in Bonaparte v. Camden & Amboy R. R. Co., 1 Bald. C. C. R. 229, Baldwin, J., in commenting upon the authority of that company, under such delegated power, to take lands, remarks that “ the company who want his property must take legal process or due course of law to obtain it; their authority is special, limited and conditional, and must be strictly followed. The law is made for their benefit, and it is their duty to take the previous steps incumbent on them, or they are trespassers.”
See, also, to the same effect, 3 Green. Chy. Rep. 47; 21 Penn. Rep. 100; 1 Zabriskie, 443; 3 Yerger, 424-5.
*223 These principles have our unqualified approval, and they :are decisive of the case before us.
That portion of the statute which bears upon the question reads as follows:
“ When it shall be deemed necessary by any municipal corporation to enter upon, or take private property, as above .provided, an application in writing shall he made to the court of common pleas of the proper county, or to the judge thereof in vacation, which application shall describe, as correctly as may be, the property to be taken, the object pro posed, and the owner of the property, and of each lot or parcel thereof known; notice of the time and place of such application shall be given, either personally, in the ordinary manner of serving legal process, or by publishing a copy of the application, with a statement of the time and place at which it is to be made, for three weeks next preceding the time of the application, in some newspaper of general circulation in the county ; if it shall appear to the court or judge that such notice has been served five days before the time of application, or has been published as above provided, and that such notice is reasonably specific and certain, then the court or judge may set a time for the inquiry into and assessment of compensation by a jury,” etc.
To confer an authority upon the court or judge, under this statute, to impannel a jury and issue an order for the possession of the land, it was necessary for the applicant to have notified the owners of the intended application, by service of process, or the publication specified in the statute. Without this, the court or judge would have no jurisdiction, and could make no valid order in the premises. There was not, and could not have been a service of process, the owners being unknown; so that the only course left for the applicant was the publication authorized by the statute, that is, to publish “ a copy of the application with a statement of the time and place at which it was to be made.” This, it appears, was not done. The record discloses the precise character of the notice that was published. It was a notice of the time and place of the intended application, but was not accompanied *224 by a copy of the application itself. If the judge had been acting as a court of general jurisdiction, and exercising the ordinary powers of chancery or of common law, jurisdiction could not have been presumed from its exercise, because the record itself shows that jurisdiction had not been acquired. Lessee of Moore v. Starke, 1 Ohio St. Rep. 369. The judge in this case, however, was, unquestionably, acting as a court of special and limited jurisdiction, and not after the course of the common law, and in all such cases, its jurisdiction should affirmatively appear upon the record. Adams v. Jeffries, 12 Ohio, 253.
The object of the appropriation, and a description of the lands to be taken, substantially as set forth in the application, appear in the published notice, and the judge may have supposed that such correspondence rendered the notice “reasonably specific and certain ; ” but it must be borne in mind that the .statutory notice is the only one which confers jurisdiction, and until that is given, the judge has no authority to. act. But when it has been given, he may determine whether the notice, including the copy of the application, is reasonably specific and certain as to the owners, the property to be taken, and the purposes to which it is to be applied. The court has no discretion as to the form of the notice; it must contain, or be accompanied by, a copy of the application, and it is idle to speculate as to the object of the enactment, and what would be a sufficient compliance with its spirit, rather than its letter. The language of the act is clear, distinct and unambiguous — a copy of the application must be published with the notice of time and place — and we are not at liberty to disregard this express requirement, or to fritter it away by mere rules of construction. If a municipal corporation avails itself of the statute to take private property without the owner’s consent, it must, as we have seen, strictly follow its provisions.
The recital in the. order by Judge Otis for summoning the jury, which reads as follows — “it appearing to me that a notice of the time and place of making the application has been published, in all respects according to law, in the Toledo *225 Commercial,” etc. — can not have the effect to confer jurisdiction, nor raise a presumption that another and different notice was published, contradicted as it is by the record itself. The record discloses what that publication was, and it shows upon its face that no copy of the application was published with it. If this requirement of the statute occurred to the judge, he doubtless supposed that the notice, though unaccompanied by a copy of the application, contained all the material facts set forth in it, and was, therefore, in itself, reasonably specific and certain as to the objects and purposes of the application; but this, as we have seen, he had no power or authority to do. The publication of a copy of the application was necessary to confer upon him jurisdiction over the matter. It was one of the preliminary steps which the statute required the applicant to take.
The application states that the owners of the lands to be appropriated are unknown to the applicant, but does not state that any efforts had been made to ascertain who they are; and it is claimed, that the omission to do so, is an error of which the plaintiffs in error may now avail themselves.
The statute seems to regard it as important, that the names of the owners should be stated in the notice of the application, and it would seem to follow, that a proceeding of this kind against unknown owners, should not be permitted, if by the exercise of ordinary diligence, at least, their names could have been ascertained; It would hardly do for us to hold that the corporate authorities, in the exercise of this high prerogative power, may remain wilfully and intentionally ignorant of the ownership, and thereby lessen the probabilities of a full and fair investigation. The better rule would seem to be to require the exercise of ordinary diligence to ascertain the ownership, before proceeding as against unknown owners. It may well be doubted, whether a proceeding against unknown owners, without showing a bona fide effort to ascertain their names, would, of itself and in view of the statutory provision, be a sufficient ground for a reversal of the order, still we think that such an application is not “reasonably specific and certain,” and that the judge to whom the same was presented, *226 might for that cause, refuse to grant the order until such diligence should be manifested.
The result of the investigation in this case, and of the case argued with it, shows the propriety of securing to the parties interested, if practicable, an opportunity to be heard. A long street near the center of business in the city of Toledo, was taken from the lands of the plaintiffs in error,.in and bordering upon the stream, and only one dollar estimated by the jury as a compensation to- the owners in the one cáse, while in the other sixty-six additional feet was taken to widen the same, and for which the jury returned that the owners of ground in such a locality were entitled to no compensation. One of two conclusions would seem to follow, either that the land was of no value, or that the jury notwithstanding the constitutional Inhibition" (Const, of 1851, Art. 1, Sec. 19), had taken into consideration the benefits resulting from the improvement, to the other property of the owner. The first is hardly possible, and the last is therefore quite probable.
The order appropriating the lands must be reversed for not publishing a copy of the application, as required by the statute.
Brinkerhoff, C.J., and Scott, Sutliff and Gholson, JJ., concurred.